AO 91 (Rev. 11/11)   Criminal Complaint (approved by AUSA K.T. Newton)                    20-093

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Pennsylvania

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| JEFFREY BELL | ) Case No. 20-mj-1758 |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___Sept. 2015 to Oct. 2018___ in the county of ___Philadelphia___ in the ___Eastern___ District of ___PA & elsewhere___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 371 | Conspiracy to commit federal program bribery fraud (18 U.S.C. Section 666(a)(1)(B) |
| 18 U.S.C. Section 1349 | Conspiracy to commit wire fraud (18 U.S.C. Section 1343) |

This criminal complaint is based on these facts:

Between September 2015 and October 2018, in the Eastern District of PA and elsewhere, defendant JEFFREY BELL conspired with others to accept money in return for being influenced in the performance of official acts and to commit wire fraud. BELL admitted to accepting from Co-Conspirator 1 multiple cash payments between 2015 and October 2018, totaling more than $10,000, in exchange for eelectronically entering passing scores on CDL examinations for Co-Conspirator 1's clients during that time frame, in violation of 18 §§ 371 and 1349.   See attached Affidavit.

☑ Continued on the attached sheet.

|  |  |
|---|---|
|  | /s Jed Fisher |
|  | *Complainant's signature* |
|  | Jed Fisher, Special Agent, FBI |
|  | *Printed name and title* |

Sworn to before me and signed in my presence.

Date:   ___10/28/2020 12:33 p.m.___          /s Honorable Richard A. Lloret
                                                                  *Judge's signature*

City and state:     ___Philadelphia, PA___          Honorable Richard A. Lloret
                                                                  *Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jed A. Fisher, having been duly sworn according to law, state as follows:

## INTRODUCTION

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and assigned to the Philadelphia Division, Fort Washington Resident Agency, Pennsylvania, and I have been employed as an FBI Special Agent since March of 2017.

2.      As a Special Agent with the FBI, my duties include the investigation of international and domestic terrorism and fraud, including tax fraud and health care fraud.  As a Special Agent, I have participated in the execution of numerous search and arrest warrants, pursuant to which I have seized evidence of plans to conduct and/or participate in fraud-related activity. I have conducted physical and electronic surveillance, debriefed confidential sources, analyzed information obtained from court-authorized pen register and trap and trace intercepts, and participated in the drafting and execution of search and arrest warrants involving these matters.

3.      I am the case agent assigned to a criminal investigation of those involved in a fraudulent scheme under which individuals obtained Pennsylvania Commercial Driver's Licenses without taking the Pennsylvania Commercial Driver's License ("CDL") examination.

4.      The information set forth below is either known to me personally, or was related to me by other law enforcement personnel. As this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during this investigation.

5.      For the reasons stated below, there is probable cause to believe that JEFFREY BELL conspired with others to commit federal program bribery (18 U.S.C. § 666(a)(1)(B)), in violation of 18 U.S.C. § 371, and conspired with others to commit and wire fraud (18 U.S.C. § 1343), in violation of 18 U.S.C. § 1349, all within the Eastern District of Pennsylvania.

6.      I base this affidavit on my personal investigation and information obtained by other FBI agents, as well as law enforcement partners with the United States Department of Transportation ("USDOT"), Office of the Inspector General and Pennsylvania State Police ("PSP").

**BACKGROUND**

7.      Co-Conspirator 1 currently owns and operates a Commercial Driver's License ("CDL") training school ("CDL School A") in Philadelphia, Pennsylvania.  In exchange for a fee, Co-Conspirator 1 provides clients with training necessary to achieve a passing score on a Pennsylvania state-mandated CDL driving skills examination.

8.      During the course of this investigation, I learned that a person is eligible to attempt a CDL driving skills examination in Pennsylvania after obtaining a valid CDL permit from their state of residency.

9.      In Pennsylvania, CDL driving skills examinations are administered by: (a) employees with the Pennsylvania Department of Transportation ("PennDOT") with examinations administered at PennDOT driver's license centers; or (b) Certified CDL Third-Party Examiners who are commercially employed persons certified to conduct CDL examinations on behalf of PennDOT.   PennDOT examiners and Third-Party Examiners are both considered to be Pennsylvania CDL examiners and, as such, are agents of PennDOT.

10.      PennDOT is a Pennsylvania state agency which receives benefits in excess of $10,000 in any one-year period under a federal program involving a grant, contract, program, subsidy, loan guarantee, insurance, or other form of federal assistance.

11.      Examinations by Third-Party Examiners are administered at private testing facilities in Pennsylvania.  The Third-Party Examiners electronically input and/or upload CDL examination data, to

include scheduling and examination results, into a commercial database known as the Commercial Skills

Testing Information Management System ("CSTIMS").

12.     Computer servers utilized to store CSTIMS data are physically located in both Virginia

and Illinois. Data entered by a CDL examiner in Pennsylvania is transmitted across state lines via the

internet to CSTIMS servers located in Virginia and Illinois.  In turn, respective state department of

motor vehicles agencies communicate with CSTIMS' servers to determine if a CDL candidate has

satisfied the requirements necessary to be issued a lawful CDL.

13.     The Berks Career and Technical Center ("BCTC"), in Leesport, PA, is a Pennsylvania

accredited third-party CDL school and examination center.

14.     During the course of this investigation, I learned that Co-Conspirator 1 charged clients of

CDL School A, on average, between $1,700 and $2,000 for CDL training.  This fee is consistent with

the practices of other CDL training facilities in the Philadelphia area.  However, I also learned that Co-

Conspirator 1 provided clients with an alternative to legitimately passing a CDL exam to obtain their

CDL.  For a cost of approximately double the normal rate, Co-Conspirator 1 arranged for a student to

receive a passing score, which was entered into CSTIMS, without actually taking the CDL driving skills

examination.

15.     An individual who obtains a CDL is able to obtain more lucrative employment as a

commercial driver and, therefore, a Pennsylvania CDL has a value of $5,000 or more.

## THE SCHEME

### Information from Cooperating Witness 1

16.     In January 2019, a cooperating witness ("CW1")[1] described a criminal scheme through which clients of Co-Conspirator 1's CDL training school, CDL School A, were able to obtain their Pennsylvania CDLs without taking the actual CDL examination.

17.     According to CW1, as part of the scheme, Co-Conspirator 1 would schedule a number of his clients to take their CDL exams at BCTC on the same date.  On paper, defendant JEFFREY BELL, who was a third-party CDL examiner employed by BCTC, was listed as these clients' examiner.  BELL did not test all of Co-Conspirator 1's clients scheduled for that date and, thus, some of Co-Conspirator 1's clients were granted passing scores without completing any form of testing.

18.     Prior to testing, Co-Conspirator 1's clients would send their personal identifying information to Co-Conspirator 1's cellular phone via text message, and Co-Conspirator 1 would then electronically forward the client information to BELL.

19.     BELL then used that client information to create a registry in the CSTIMS database for each of those clients, which allowed BELL to schedule a CDL exam for each of those clients, and then later enter  results of a Pennsylvania CDL road examination into the CSTIMS database for each of those clients, with BELL affirming that he had conducted those road examinations for each of those clients of Co-Conspirator 1.[2]

---

[1]  In 2019, CW1 entered a guilty plea, pursuant to a cooperation plea agreement with the Government, to conspiracy and multiple counts of access device fraud and aggravated identity theft in the Eastern District of Pennsylvania.  CW1 was sentenced on July 1, 2020.  The Government requested a sentence below the sentencing guidelines and mandatory minimum sentence for the aggravated identity theft counts and CW1 was sentenced to a term of 16 months' imprisonment, a sentence below the Sentencing Guidelines and mandatory minimum sentence for those offenses.

[2] As detailed above, data in the CSTIMS database is transmitted to, or retrieved by, individual state Departments of Motor Vehicles.

**PennDOT Audit of BCTC**

20.     In the fall of 2018, PennDOT conducted both an overt and covert audit of BCTC.  The audit identified irregularities in BCTC's CDL examination program, including a finding that BCTC's CDL examination passing rate was over 90%, a rate significantly higher than the state average passing rate.

**PennDOT Interview of JEFFREY BELL**

21.     In November 2018, PennDOT representatives interviewed defendant JEFFREY BELL. During that interview, BELL admitted to using CDL examination score sheets, which were pre-signed by R.C., a BCTC CDL program supervisor and Pennsylvania certified CDL third-party examiner, to create paper records falsely reflecting that individuals passed CDL examinations conducted by R.C.  An examiner's signature on a scoring sheet is an attestation that the signee personally conducted the CDL examination.  BELL's use of the score sheets pre-signed by R.C. allowed BELL to circumvent the CSTIMS system default rules which limited CDL examiners to scheduling and/or conduct five complete examinations per day.[3]   By using the score sheets pre-signed by R.C., BELL was able to fraudulently enter up to ten passing examination scores per day instead of his daily limit of five examinations.

22.     In February 2019, I interviewed JEFFREY BELL.  During this interview, BELL admitted to accepting from Co-Conspirator 1 multiple cash payments between 2015 and October 2018, totaling more than $10,000, in exchange for giving Co-Conspirator 1's clients passing scores on CDL examinations during that time frame.  BELL admitted that he did not properly test some of Co-Conspirator 1's clients and, in some cases, did not test Co-Conspirator 1's clients at all, but he entered

---

[3] This limitation on number of tests allowed to be administered on any one day is set by PennDOT, as reflected in that the CSTIMS system only allows five complete exams to be evaluated and/or scheduled for one day. If more than five full exams are scheduled or evaluated, PennDOT receives a notification which may trigger an overt or covert audit. As a practical matter, PennDOT assesses that each full exam requires approximately two hours to complete, and each exam must be conducted during daylight hours.

passing scores for those clients into CSTIMS, thus authorizing those clients of Co-Conspirator 1 to receive their CDL.  According to BELL, he participated in this fraudulent activity with Co-Conspirator 1 from approximately 2015 through September 2018.

22.    BELL estimated he received more than fifty separate cash payments, ranging between approximately $200 to $300, from Co-Conspirator 1 to pass Co-Conspirator 1's clients regardless of those clients' actual driving abilities.

23.    BELL admitted that he falsely generated passing CDL examination scores, at Co-Conspirator 1's direction, for clients of Co-Conspirator 1 who had not taken any portion of the CDL examination, and that he electronically uploaded these false scores into the CSTIMS database, creating a chain of events that ultimately led to the issuance, on the part of multiple states, of a lawful CDLs for those clients of Co-Conspirator 1.

24.    On February 28, 2019, without prompting, BELL sent a text message to me in which he acknowledged meeting with me and admitted that he knew that he "did wrong."

25.    I learned from a confidential witness ("CW2"),[4] who had direct access to Co-Conspirator 1 between approximately 2018 and 2019, that Co-Conspirator 1 was a heavy drinker and was often too intoxicated to physically type text messages on his phone.  According to CW2, Co-Conspirator 1 would dictate messages to CW2 and CW2 would then send those messages, using Co-Conspirator 1's cellular phone, on Co-Conspirator 1's behalf.  CW2 sent text messages to BELL and others to arrange CDL examinations for Co-Conspirator 1's clients.  In addition, CW2 communicated with clients, at Co-Conspirator 1's direction, to inform clients of the fees that Co-Conspirator 1 charged to guarantee a CDL -- $3,500.00 for a vehicle with an automatic transmission and $4,500.00 for a vehicle with manual transmission.

---

[4] CW2 is a relative by marriage of CW1 and cooperated in this investigation to further CW1's cooperation.

26.     On July 16, 2019, FBI agents executed a search warrant at CDL School A, Co-Conspirator 1's business in Philadelphia, PA.  Among other items, FBI agents seized business records, including contracts between Co-Conspirator 1 and his clients and receipts for fees associated with Co-Conspirator 1's services.

27.     In November 2019, I reviewed records obtained from BCTC, including time and attendance sheets and payroll records for BELL and R.C.  I also reviewed PennDOT records of all examinations conducted at BCTC while BELL and R.C. were employed there.  The PennDOT records include information which was uploaded by BELL and R.C. into CSTIMS.  Specifically, the PennDOT data includes the dates and times of reported CDL exams, the names of the examiner and examinee, the duration of the reported examination, the commercial vehicle utilized during the reported exam, and a reported pass or failure status for each examinee.

28.     A comparison of the BCTC data against the CSTIMS and PennDOT data corroborates information I learned from other sources during this investigation, including the following:

    a.     <u>March 10, 2018.</u>

        (1)     BELL's signed time sheets show he was not present at work on March 5, 2018.

        (2)     From my review of CSTIMS login information, I know that BELL logged into the CSTIMS system at 12:17 p.m. on March 5, 2018 for a brief session.

        (3)     My review of Co-Conspirator 1's telephone records shows that Co-Conspirator 1 sent five text messages to BELL from 2:32 p.m. to 2:41 p.m. on March 5, 2018.

        (4)     From CSTIMS login information, I know that BELL next logged into CSTIMS on March 7, 2018 at 5:40 a.m. and scheduled five exams to be performed by him and five exams to be performed by R.C. on Saturday, March 10, 2018.

(5)     From my review of BCTC records, including signed time sheets, I know that that R.C. was scheduled off from work on Saturday, March 10, 2018 and did not work on that date.

(6)     PennDOT and CSTIMS data reflect that all 10 students of Co-Conspirator 1's CDL School A were granted passing scores for exams allegedly conducted by both BELL and R.C. on March 10, 2018.

(7)     BELL's signed BCTC timesheet for Saturday, March 10, 2018 indicates he was present for work at BCTC from 6:00 a.m. until 4:00 p.m.

(8)     CSTIMS records reflect that BELL and R.C. allegedly conducted simultaneous road tests of two individuals, U.S. and L.S., on March 10, 2018, beginning at 4:00 p.m., using the same vehicle, Pennsylvania tag AG34839, which was registered to Co-Conspirator 1.

(9)     BELL's signed BCTC timesheet reflects that his workday ended at 4:00 p.m. on March 10, 2018, but PennDOT records reflect that BELL's road test exam for L.S. did not end until 4:30 p.m.

(10)     On Sunday, March 11, 2018, BELL logged into CSTIMS at approximately 1:16 p.m., and uploaded 10 passing scores for the exams allegedly conducted by BELL and R.C. on March 10, 2018, including the exams for U.S. and L.S.

(11)     In reviewing L.S.'s signed score sheet, I observed that L.S. included his telephone number, ending in 6617.

(12)     My review of Co-Conspirator 1's cell phone records shows that, between February 22 and March 2, 2018, L.S. and Co-conspirator 1 exchanged four text messages and two telephone calls, with one of those calls lasting 55 seconds and the other lasting 43 seconds.

(13)     My review of CSTIMS data shows that BELL logged into the system on March 10, 2018 at 2:39 p.m. and input passing scores for four other CDL exams for four men from New

York for exams that were allegedly conducted by Bell on March 9, 2018, a day that BCTC records show that BELL did not work, with those fraudulent passing scores resulting in the issuance of CDLs for those four men by the State of New York.

        b.    <u>February 16, 2018.</u>

        (1)    On February 13, 2018, Co-Conspirator 1 and BELL exchanged more than 20 text messages.

        (2)    At approximately 11:52 a.m., BELL logged into the CSTIMS system and scheduled two exams to be conducted by R.C. and five exams to be conducted by BELL on February 16, 2018.

        (3)    My review of BCTC's signed time sheets shows that neither BELL nor R.C. were present for work on February 16, 2018.

        (4)    On February 19, 2018 at approximately 5:02 a.m., BELL logged into the CSTIMS system and falsely input passing scores for the seven individuals allegedly tested by BELL and R.C. on February 16, 2018.

        (5)    Additionally, my review of PennDOT records shows that BELL and R.C. allegedly conducted examinations at the same time, using the same commercial vehicle, PA tag AG54616, which was owned by Co-Conspirator 1.[5]

29.    My review of records seized from Co-Conspirator-1's business on July 16, 2019, pursuant to the execution of a search warrant, shows, among other things, a receipt for $1,700, dated April 25, 2018 from F.A. for "CDL Training."

---

[5]  PennDOT records also revealed that BELL's son was tested by Co-Conspirator 1 on May 2, 2018, with the examination starting at 6:00 p.m., and ending at 7:30 p.m. BELL's son was granted a passing score. According to his BCTC timesheet, however, Co-Conspirator 2 stopped working that day at 4:00 p.m. BELL's BCTC timesheet for that date shows that he was present at work at BCTC from 3:30 p.m. to 9:30 p.m.

      a.      My review of Co-Conspirator 1's telephone records showed that Co-Conspirator 1 and BELL exchanged over a dozen text messages and a minute-long telephone call on May 13, 2020.

      b.      My review of CSTIMS data showed that, on May 14, 2018, at 5:14 a.m., BELL logged into the system and scheduled an exam for F.A. for May 17, 2018, with BELL as the scheduled examiner.

      c.      My review of BCTC records showed that, according to BELL's hand-written and signed time sheets, BELL did not work on May 17, 2018.

      d.      My review of CSTIMS data also showed that, on May 20, 2018, BELL accessed the CSTIMS database and posted fraudulent passing scores for F.A. for a CDL exam which allegedly occurred on May 17, 2020 in Co-Conspirator 1's commercial truck, Pennsylvania tag AG54616, with BELL as the examiner.

      e.      As a result of those fraudulent passing scores, F.A.'s home state of New Jersey issued a CDL to F.A.

30.     Wherefore, based on my training, experience, and knowledge of this investigation, I have probable cause to believe, and do so believe that, JEFFREY BELL, as an agent of PennDOT: (a) conspired with others, including Co-Conspirator 1, to corruptly accept and agree to accept cash, totaling more than $10,000, intending to be influenced or rewarded in connection with the issuance of Pennsylvania CDLs to Co-Conspirator 1's clients, with those CDLs each having a value of $5,000 or more, in violation of 18 U.S.C. §§ 371, 666; and (b) conspired with others, including Co-Conspirator 1, to commit wire fraud, through the submission of fraudulent CDL examination information, via wire, to CSTIMS in violation of 18 U.S.C. §§ 1343, 1349, and request that a warrant be issued for his arrest.

Respectfully submitted,

/s Jed A. Fisher
JED A. FISHER
Special Agent, Federal Bureau of Investigation

Subscribed and sworn to before me
on October 28, 2020:

/s Honorable Richard A. Lloret
HONORABLE RICHARD A. LLORET
UNITED STATES MAGISTRATE JUDGE